FILED*11 SEP 20 10:18USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

**STEVEN M. COOPER,**

Plaintiff

v.

**MICHAEL J. ASTRUE,**
Commissioner of Social Security

Defendant.

Civil No. 10-820-CL

**FINDINGS AND RECOMMENDATION**

CLARKE, Magistrate Judge:

Plaintiff Steven Cooper ("Cooper") seeks judicial review of the Social Security Commissioner's final decision finding that his entitlement to Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ceased as of December 24, 2009. This court has jurisdiction under 42 U.S.C. §§ 405(g). The Commissioner's decision should be affirmed.

///

///

1 - FINDINGS AND RECOMMENDATION

## BACKGROUND

Born in 1956, Cooper alleges disability since January 1, 2000 (Tr. 124), due to post-traumatic stress disorder, agoraphobia, panic attacks, migraine headaches, irritable bowel syndrome, and neck pain. Tr. 164. He filed an application for SSI on August 9, 2007 (Tr. 124), which the Commissioner rejected initially and upon reconsideration. Tr. 89-90. An ALJ held a hearing on December 1, 2009 (Tr. 27-57), and subsequently found him disabled between August 15, 2007, and December 23, 2009. Tr. 18. The ALJ found that Cooper's disability ceased as of December 24, 2009. Tr. 22.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. 20 C.F.R. §§ 416.909; 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, he is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and

2 - FINDINGS AND RECOMMENDATION

continuing basis, despite limitations imposed by his impairments. 20 C.F.R. § 416.920(e); Social Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform her past relevant work at step four. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can perform his past relevant work, he is not disabled. If the ALJ finds that the claimant's RFC precludes performance of his past relevant work the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v); 416.920(f); *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the claimant cannot perform such work, he is disabled. *Id.*

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1520(g); 404.1566; 416.920(g); 416.966.

If a claimant is found disabled at any point in the above proceeding, the Commissioner may conduct an additional eight-step continuing disability evaluation to determine if the claimant remains disabled. 20 C.F.R. § 416.994(b)(5). This analysis again requires that the ALJ consider a claimant's RFC, and concludes with an inquiry into whether such an individual can perform work in the national economy. *Id.*

///

3 - FINDINGS AND RECOMMENDATION

## THE ALJ'S FINDINGS

The ALJ found Cooper's headaches, cervical and lumbar strain, depression, posttraumatic stress disorder, panic disorder with agorophobia, and substance abuse "severe" at step two in the sequential proceedings, but found that these impairments did not meet or equal an impairment "listed" in the Commissioner's regulations at step three. Tr. 16. The ALJ evaluated Cooper's RFC for the period between February 16, 2007, and August 14, 2007:

> [T]he claimant had the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently. He could stand and walk 6 hours out of an 8-hour day. He could occasionally climb ladders, ropes and scaffolds. He could frequently climb ramps and stairs, balance, kneel, crouch and crawl. He needed to avoid concentrated exposure to hazards. He was limited to brief work-related interactions with the public and co-workers. *Id.*

The ALJ found that this RFC allowed Cooper to perform his past relevant work as a data entry worker between February 16, 2007, and August 14, 2007. Tr. 17.

The ALJ subsequently assessed Cooper's RFC for the period between August 15, 2007, and December 23, 2009:

> [T]he claimant had the residual functional capacity to perform light work . . . except he was limited to frequent climbing of stairs and ramps, balancing, and kneeling. He could occasionally climb ladders ropes and scaffolds, stoop, crouch, and crawl. He should avoid even moderate exposure to workplace hazards such as machinery and heights. He was limited to simple, routine tasks with occasional brief and superficial contact with coworkers and the public. He would miss 2 or more days of work per month. *Id.*

The ALJ found that this RFC directed that Cooper unable to perform his past relevant work between August 15, 2007, and December 23, 2009, and also found that Cooper could not perform work in the national economy during this period. Tr. 18. The ALJ consequently found Cooper disabled

4 - FINDINGS AND RECOMMENDATION

between August 15, 2007, and December 23, 2009. Tr. 19. Here the ALJ found that Cooper's substance abuse disorder was not a contributing factor material to this determination of disability. *Id.*

Following this determination, the ALJ found that, beginning December 24, 2009, Cooper did not meet or equal a "listed" disorder, and again assessed Cooper's RFC beginning December 24, 2009:

> [B]eginning on December 24, 2009, the claimant has the residual functional capacity to perform light work . . . except he is limited to frequent climbing of stairs and ramps, balancing, and kneeling. He can occasionally climb ladders, ropes and scaffolds, and can occasionally stoop, crouch, and crawl. He should avoid even moderate exposure to workplace hazards such as machinery and heights. He is limited to simple, routine tasks with occasional brief and superficial contacts with coworkers and the public. Tr. 20.

The ALJ subsequently found that Cooper experienced medical improvement related to his ability to work, and that, as of December 24, 2009, Cooper was unable to perform his past relevant work. Tr. 21. However, the ALJ found that, as of December 24, 2009, Cooper could perform work in the national economy. *Id.* The ALJ therefore found that his disability ended on December 24, 2009. Tr. 22.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as

5 - FINDINGS AND RECOMMENDATION

a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)), *see* also *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*, *see* also *Batson*, 359 F.3d at 1193.

## ANALYSIS

Cooper asserts that the ALJ erroneously found that his disability ceased as of December 24, 2009, because the ALJ failed to: (1) properly evaluate a letter written by Cooper's mental health treatment providers; (2) develop the medical record; and (3) obtain medical expert testimony.

### I. Medical Source Statements

Cooper asserts that the ALJ erroneously evaluated a November 24, 2009, letter signed by Jennifer Ferguson, Qualified Mental Health Professional ("QMHP"), and Margaret Scharf, Psychiatric Mental Health Nurse Practitioner ("PMHNP"). Pl.'s Opening Br. 6.

#### A. Standards: Medical Source Statements

Disability opinions are reserved for the Commissioner. 20 C.F.R. § 416.927(e)(1). When making that determination, the ALJ generally must accord greater weight to the opinion of a treating physician than to that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must also generally give greater weight to the opinion of an examining physician over that

of a reviewing physician. *Id.* If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician's opinion in favor of an examining physician's opinion. *Id.* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

The Commissioner's regulations further instruct that the Agency will consider non-medical source observations regarding the severity of a claimant's impairment. 20 C.F.R. § 416.913(d). Such sources include nurse practitioners and medical sources not specifically identified in 20 C.F.R § 413(a). *Id.* Such sources may "show the severity of your impairment(s) and how it affects your ability to work." *Id.*

### B. Analysis

Ms. Ferguson and Ms. Scharf are, respectively, a "qualified mental health professional" and a nurse practitioner. They are therefore evaluated as "other" sources and are not entitled to the weight accorded a medical source under the Commissioner's regulations. 20 C.F.R. § 416.908(d). Their opinions are relevant to the extent they describe Cooper's symptoms and functionality. *Id.*

#### 1. Treatment Notes Submitted by Nurse Scharf and Ms. Ferguson

The record shows that Nurse Scharf and Ms. Ferguson concurrently treated Cooper at Lifeworks NorthWest counseling center between September 8, 2008 (Tr. 540) and August 17, 2009. Tr. 508-40. Nurse Scharf prescribed psychotropic medication and Ms. Ferguson provided mental health counseling. *Id.*

During this time Nurse Scharf saw Cooper on four occasions. Tr. 508, 514, 515, 517. Beginning on September 8, 2008, she assessed bipolar II disorder, general anxiety disorder, panic

7 - FINDINGS AND RECOMMENDATION

disorder, agorophobia, and depression. Tr. 540. At the end of this period, on August 17, 2009, Nurse Scharf diagnosed bipolar disorder, general anxiety disorder, panic disorder, and agorophobia, and prescribed Wellbutrin and risperdal. Tr. 508. Nurse Scharf noted Cooper's reports of "emotionality and tearfulness" (Tr. 514), and on August 17, 2009, noted that Cooper had moved to a new apartment and "handled the move well." Tr. 508. Here she noted the location of Cooper's new apartment and stated that Cooper wished to continue his care at a location closer to that site. *Id.*

During the same period, Ms. Ferguson completed chart notes relating to Cooper on five dates. The record does not clearly show that Ms. Ferguson saw Cooper on each of these occasions. On October 29, and 30, 2008, Ms. Ferguson completed a diagnosis and social history form (Tr. 530–31), a mental status form (Tr. 532-22), a form entitled "relevant medical conditions form" (Tr. 534-35), a form addressing drug and alcohol abuse (Tr. 536), a "risk assessment" form (Tr. 537), and a general assessment. Tr. 538-39. Ms. Ferguson completed a form describing a "safety plan," November 4, 2008, but did not indicate that she saw Cooper on that day. Tr. 522. On November 11, 2008, she completed a treatment plan, and again does not indicate that she actually saw Cooper on that date. Tr. 518-31. Finally, on August 11, 2009, Ms. Ferguson completed another treatment plan. Tr. 510-13.

On November 24, 2009, Ferguson and Scharf wrote a letter stating that Cooper's diagnoses are panic disorder with agorophobia, post-traumatic stress disorder, and recurrent, moderate major depressive disorder. Tr. 607. They stated that Cooper's symptoms include anxiety, panic attacks, intrusive flashbacks of past trauma, and that these symptoms "impact his activities of daily living

8 - FINDINGS AND RECOMMENDATION

to the extent that [he] has a great deal of trouble leaving his house except for necessary trips to health providers and the grocery store." *Id.* They also stated that, "Mr. Cooper's symptoms will limit his capacity to return to the work force as he is not always able to overcome his phobia of public transportation and social interaction to the point of successfully being able to leave his home." *Id.* Finally, they stated that Cooper's psychiatric impairments additionally "impact[] his ability to concentrate for long periods of time, his ability to remember complex instructions, and his ability to cope with pressure related to multitasking." *Id.*

### 2. The ALJ's Findings Regarding Nurse Scharf and Ms. Ferguson

The ALJ discussed this letter (Tr. 17), and subsequently found that Cooper was unable to work between August 15, 2007, and December 23, 2009. Tr. 18. The ALJ's RFC assessment pertaining to this period limited Cooper to "simple, routine tasks with occasional brief and superficial contact with coworkers and the public," and found that he would miss two or more days of work per month. Tr. 17. Thus, the ALJ credited the limitations articulated by Ms. Ferguson and Nurse Scharf in their letter.

The ALJ subsequently gave the December 22, 2009, opinion of examining clinical neuropsychologist David Gostnell, Ph.D., "great weight" in revising Cooper's RFC for the period beginning December 24, 2009. Tr. 21. Here the ALJ retained Cooper's RFC restricting him to simple tasks and superficial contact with coworkers and the public, but did not find he would miss two days of work per month. Tr. 20. The ALJ found that this RFC allowed Cooper perform work in the national economy as of December 24, 2009. *Id.*

Cooper now asserts that this acceptance of Dr. Gostnell's opinion erroneously failed to reject

9 - FINDINGS AND RECOMMENDATION

the letter submitted by Ferguson and Scharf. Pl.'s Opening Br. 6.

The ALJ discussed Cooper's 2008 and 2009 treatment records in evaluating Dr. Gostnell's opinion. Tr. 20. The ALJ specifically cited summer 2008 treatment notes at Cascadia mental health services, and also Cooper's interest in employment expressed to Ms. Ferguson in a chart note dated August 11, 2009. Tr. 20 (citing Ex 17F/11 and 16F/3). The ALJ subsequently discussed Cooper's report to Dr. Gostnell that he could travel by bus, had weekly dinners with friends, managed his apartment, dogs, and medications, and spent time reading and surfing the web. Tr. 21. The ALJ also cited Dr. Gostnell's mental status exam showing stable affect within normal limits. Id. Finally, the ALJ cited Dr. Gostnell's concentration testing, and noted that Cooper showed "some difficulty," but also noted that Dr. Gostnell believed Cooper's daily marijuana use interfered with this testing. Tr. 21.

Dr. Gostnell's report reflects these findings. Tr. 597-603. Dr. Gostnell additionally discussed Cooper's treatment at LifeWorks on October 28, 2008, and October 29, 2008. Tr. 602. Dr. Gostnell found that Nurse Scharf's records "generally confirm" Cooper's presentation, but noted that Cooper's past medical providers did not note his cannabis use or past drug use. Id.

The ALJ's decision must be based upon substantial evidence. *Bray*, 554 F.3d at 1222. Further, the ALJ may reject medical source opinions unsupported by clinical notes and findings. *Bayliss*, 427 F.3d at 1216. Here, the ALJ found Dr. Gostnell's opinion properly supported for the period after December 24, 2009, and, because the record contains no chart notes submitted by Nurse Scharf and Ms. Ferguson for the same period, appropriately gave Dr. Gostnell's opinion greater weight. For this reason, Cooper fails to establish reversible error in the ALJ's reliance upon Dr.

10 - FINDINGS AND RECOMMENDATION

Gostnell's opinion for the period after December 24, 2009.

## II.  The ALJ's Duty to Develop the Record

Cooper asserts that the ALJ had a duty to develop the record regarding the letter submitted by Ferguson and Scharf, because "there is no evidence of this treatment in the record. Records from this counseling might have clarified the differences between Dr. Gostnell's evaluation and the limitations noted in the November 24, 2009, letter." Pl.'s Opening Br. 7-8.

### A.  Standards: Developing the Record

The ALJ has a duty to develop the record when the claimant's onset date is ambiguous, *Armstrong v. Comm'r*, 160 F.3d 587, 590 (9th Cir. 1998), or when the record is too inadequate for the Commissioner to make a proper disability determination. 20 C.F.R. § 416.913(e); *Bayliss*, 427 F.3d at 1217. The ALJ's duty is heightened when a claimant is unrepresented, *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003), but such reasoning does not apply when the record reflects no impairment or associated limitations. *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

### B. Analysis

The record contains treatment notes submitted by both Ferguson and Scharf, discussed above. Tr. 508-40. The last of these notes is dated August 17, 2009. Tr. 508. Cooper asserts now that their November 24, 2009, letter establishes that both continued to treat Cooper between August 2009 and the November 24, 2009, date of their letter. Pl.'s Opening Br., 7.

The letter in fact states that "Mr. Cooper is very consistently involved in his mental health treatment. He attends weekly therapy sessions, weekly group therapy, and monthly psychiatric medication management sessions." Tr. 607. It does not state that Nurse Scharf and Ms. Ferguson

11 - FINDINGS AND RECOMMENDATION

conducted this treatment. The last chart note submitted by Nurse Scharf, on August 17, 2009, states that Cooper wished to obtain subsequent treatment closer to his new home. Tr. 508. The record contains no notes produced by Ms. Ferguson after an August 11, 2009, "treatment plan." Tr. 510-13. The last entry on this date indicates that Ms. Ferguson "provided advice/recommendations to involved others." Tr. 513.

This evidence does not establish that Ferguson and Scharf continued to treat Cooper themselves between August and November 2009. Further, Cooper, who was represented by counsel, could have submitted relevant treatment notes pertaining to the period. Cooper's failure to do so does not establish that the ALJ did not properly develop the record. This submission should therefore be rejected.

### III.    The ALJ's Duty to Call a Medical Expert

Finally, Cooper argues that the ALJ was obliged to call a medical expert in determining that his disability ended.

Cooper first asserts that, within the Ninth Circuit, the ALJ is not permitted to act as medical expert. Pl.'s Opening Br. 10 (citing *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)). Cooper then refers to the Commissioner's Administrative Ruling 83-20, claiming that, "if the evidence of medical improvement is ambiguous, by analogy with the setting of an onset date, the ALJ cannot act as his or her own expert and should be obligated to obtain medical expert testimony." *Id.* Cooper concludes, "the same standard should apply where the evidence regarding medical improvement is ambiguous." *Id.* Cooper finally asserts that this new standard presently applies because the record is ambiguous, citing the differences between Dr. Gostnell's opinion and the letter

submitted by Nurse Scharf and Ms. Ferguson. *Id.*

Cooper's authorities do not support his argument. While an ALJ may not substitute his opinion for that of a physician, *Day*, 522 F.2d at 1156, it is axiomatic that the ALJ must necessarily evaluate the medical evidence before him. Rejection of a medical source statement because it is unsupported by treatment notes is consistent with Ninth Circuit standards regarding medical source statements, *Bayliss*, 427 F.3d 1216, and does not constitute a substitution of judgement. Further, SSR 83-20 instructs the ALJ to call a medical expert when a claimant's disability onset date pertaining to an impairment of non-traumatic origin is ambiguous. SSR 83-20 at *3 (available at 1983 WL 31249). No authority suggests this administrative ruling applies to a disability cessation case, and the court therefore flatly declines Cooper's invitation to construe it as such.

Finally, contradiction does not create ambiguity. As discussed above, Cooper did not submit evidence to the record pertaining to his mental health treatment records after August 2009. Dr. Gostnell's December 22, 2009, opinion contradicts the November 24, 2009, letter submitted by Ferguson and Scharf. *Infra*, 9-11. The ALJ's reliance on that opinion, to the extent it was properly supported, does not support a presumption that the ALJ must develop the record. Cooper's submissions on the matter are not supported by the record before this court.

In summary, this court refuses to extend the ALJ's duty to develop the record regarding onset date to a cessation date finding. Cooper's indicated authorities do not address disability cessation. This court finds no authority supporting Cooper's proposition that the ALJ must call a medical expert before finding that a claimant's disability ends. This submission should therefore be rejected.
///

13 - FINDINGS AND RECOMMENDATION

## CONCLUSION AND RECOMMENDATION

The Commissioner's decision that Cooper's disability ended on December 24, 2009, is based upon correct legal standards and supported by substantial evidence. The Commissioner's decision should be AFFIRMED.

## SCHEDULING ORDER

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.* Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge. *Objections to this Report and Recommendation, if any, are due by October 11, 2011 If objections are filed, any response to the objections are due by October 28, 2011.* See Fed. R. Civ. P. 72, 6.

DATED this 20 day of September, 2011.

_____
MARK D. CLARKE
United States Magistrate Judge

14 - FINDINGS AND RECOMMENDATION